Ladies and gentlemen, our first case for argument, United States v. Smith, Ms. Jacobs. May it please the court, Michelle Jacobs for the defendant Derrick Smith. The district court's decision allowing the government to admit 34 recorded telephone calls and eight body recordings without allowing cross-examination of the confidential informant and without any contemporaneous cautionary or explanatory instruction to the jury violated Mr. Smith's rights under the Confrontation Clause. His conviction should be vacated and the case remanded for a new trial. This case – Counsel, I'm puzzled. Why aren't you making an argument that it simply violated the hearsay rule? I understand and actually from your concurrence in the right decision – It's not from my concurrence. It's from the Supreme Court's rule that you never start with the Constitution. You get there only if other means of addressing an issue are impossible or unconstitutional. I'm asking why you start with the Constitution rather than the hearsay rule. Well, I start in part because that's what was preserved and that was what the district court premised its decision in allowing the recordings to be presented. I also relied on the court's decision and the address of your concurrence and the issue that was raised therein. The decision in that case did indicate that a preserved confrontation – Are you making an argument under the hearsay rule? Any argument under the hearsay rule? The argument is that many of the statements that were presented here via the confidential informants' statements were offered for the truth. To the extent that – No, I'm making a concrete question. Are you making an argument under the hearsay rule? I didn't see it in your brief. Did I miss it? No, we made the argument under the confrontation clause, which again is – No rule of evidence is cited anywhere in your brief. Again, we made the argument, as I said, under the confrontation clause. And the reason that we did that is because – Well, I mean, it's premised on this court's decisions that this context exception, this limited exception that the government should be allowed to present at times, limited information – Did you try to call him as a witness? I'm sorry? Did you try to call him as a witness? We did not call him as a witness. There was some discussion of whether or not he would be available as a witness in any event. But under the Supreme Court's decision in Melendez-Diaz, if the prosecution decides to present the evidence, and in this case they did, and offer it for context, as they did, it is their burden, the Supreme Court says, to call the witness unless there is an actual exception that allows for the presentation of the evidence. And here there is not. The use of this context exception or contextual exception – Would you forget about context? I don't even understand what that is. And just address the hearsay question, which is what the Supreme Court has defined as the confrontation clause problem. Testimonial evidence offered for the truth of the matter stated. In what way was the informant's declaration offered for the truth of the matter stated? There are lots of examples, and I'll just give a couple, and some of them are in our brief, obviously. The January 26th recording. The government concedes that Smith, in fact, doesn't say much of anything in that recording. It's eight single-spaced pages of transcript. Time is short. Let me give you an example. Suppose the informant says, and this is recorded, the informant says, I will pay you $7,000 if you perform the following favor for me. Do you agree? And the answer from Smith is yes. Is that a statement being offered for the truth of the matter stated? Is the informant's statement being offered for the truth? This is the recorded conversation. I've just given you the hypothetical recorded conversation. Okay. Is the informant's statement being offered for the truth of the matter stated? It could be, certainly. What do you mean it could be? The government is offering the statement. Nobody thought that the informant was actually offering $7,000. It's not being offered as proof that the informant was genuinely offering $7,000. Right? That's the truth of the matter stated, that I will pay you $7,000. That's not what it's being offered for. It's offered to show what the word yes is agreeing to, and the word yes is the crime, as I have set this up. Right. But if the informant is not testifying and not subject to cross-examination, then if the government suggests that they're not offering the informant's side of the conversation for the truth of the matter asserted, it has to be offered for some non-person. What would you want to ask him on cross-examination? What would I want to ask the informant on cross-examination? There would be a lot that would be offered. For example, using this example. Regarding the example Judge Easterbrook just gave. Using the example that Judge Easterbrook just gave. And that's really the January 24th conversation that comes up. The government suggests in the brief that that's the first time there's any reported, but the cross. I'm asking a simple question. But you have to understand. Look, listen to me, would you please? Sure. All right. What would you ask this informant about the statement you just. I would ask the informant what conversations for the six weeks of the investigation that preceded that statement were about. Because for six weeks before that statement was recorded on January 24th, according to the record, there were conversations between Smith and the informant. And whether there were conversations, for example, that the informant may have told him, I have somebody who wants to make a campaign donation to you for $7,000. I mean, if that's the case, that would be highly relevant and highly informative of what the January 24th statement actually meant. But that didn't happen because the informant wasn't produced at trial. So that would be the kind of cross-examination. There's a lot of other things. I mean, the informant was. And we provide some of the impeachment material that they wanted to get into with the informant in the brief, stealing money, having contact with Smith that's not recorded. So, again, for every time the informant or Smith says something on a recording, there's another contact between the informant and Smith that the jury doesn't know about that would give, I mean, and I don't say this word context in the hearsay context, but would give context to, would inform the statements that are being made on these recordings. That sounds not remotely like a confrontation clause or hearsay concern. It sounds like a rule of completeness concern, that you're saying that once some of the informant's statements is offered, all of them have to be offered in some way. That has nothing to do with the confrontation clause. No, that's not what I mean. And what I mean is that cross-examination of the informant would inform the informant's side of the conversations and Smith's side of the conversations. This defendant has a right under the confrontation clause to confront his accusers, and the accuser here was the informant. This court has recognized, and we recognize, this court has recognized in limited circumstances, I mean, the language of these cases, that this exception is limited for brief gaps in the testimony. Adams, for example, or Walker, these are very brief transcript excerpts in these cases where, given your example, the informant's side of the conversation may or may not be substantive, evidence against the defendant, or it may provide context. Here, this just swallows the rule. This context swallows the confrontation rule. Virtually any conversation. If I'm having a conversation with you, my statements inform what you're saying, your statements inform what I'm saying. They provide context. But at some point, that has to give to the defendant's rights of confrontation, and here it did not. And I don't know how the jury could possibly have sorted out what was being offered for the truth and what not when there's no contemporaneous instruction whatsoever. There's one boilerplate instruction at the end of the case that this court had warned shouldn't be used as a boilerplate instruction. The instructions should be concrete and molded to the case in front of it. The jury had, I mean, the stack is sitting right over there, the jury had an inch or more stack of transcripts in front of it, and it is supposed to figure out Smith's versus the informant's, what it could use, what it could not. I would submit that it's really a gross violation of the defendant's confrontation rights. All this discussion about these recordings, just how relevant were they? I mean, we got the FBI, he admits to the FBI, he signed the letter, they were fined $2,500 in marked bills. I mean, is there sufficient evidence here apart from this? Well, we didn't make a sufficiency, but the harmless error has to be harmless beyond a reasonable doubt, and if these recordings were not admissible against Mr. Smith, then I would submit under the harmless beyond a reasonable doubt standard, it absolutely is not harmless. Would you say all of these recordings fall into that category? Is it the cumulative amount that you're concerned? Well, it's the cumulative amount, and it's the jury's complete inability to understand how it would be able to use the evidence. I mean, harmless beyond a reasonable doubt, Judge, means that the factors the court is supposed to consider, the importance of the evidence, this was the foundation of the government's case, whether the evidence is cumulative. There's some other evidence. I'm not going to say there's no evidence against Smith, but the evidence wasn't cumulative. This was the evidence against him. You know, is there corroboration for the informant? It's the recordings. That is the informant. That's the only evidence. And then the overall strength of the evidence. It's the recordings and his statement. You know, there was some other construction of the statement that was argued at the trial. This was a campaign donation. It wasn't paid until, I want to say 10 days. I'm not sure that's exactly right, but well after the letter was provided. You know, there was something to argue about. Without these statements, do I think that this is an error that was harmless beyond a reasonable doubt? No. Again, it's not a sufficiency of the evidence analysis. Okay, thank you, Ms. Boden. Thank you. Ms. Bonamici? May it please the court. Counsel, good morning. The defendant's, the statements that were admitted did not violate the hearsay rule and they did not violate the defendant's rights under the confrontation clause. Most importantly, fundamentally to begin with, because they were not authoritative. Would you have objected if the defendant's lawyer had called the informant as a witness? I'm sorry, Your Honor? Would you have objected if the defendant's lawyer had called the informant as a witness? Your Honor, my understanding from the record is that the defendant's lawyer spoke with the lawyer for the confidential informant and was advised that the confidential informant intended to take the Fifth Amendment and not testify. So as a practical result, the informant was not available to either party at trial. He would take the Fifth Amendment? Yes. As indicated... Why was that? There was some other conduct by the informant that was inappropriate. For example, he had taken money. There were a lot of problems with the informant, as it turned out. And so he... Was he being prosecuted? You know, I don't know the answer to that question. I'm sorry. I don't know. But he was not willing to testify, and at that point, the defense lawyer decided to just drop it. There was no examination of what the reasons were or whether they could bring him to court and make sure that he had the proper right, but the defendants just dropped it. And we had decided initially that we were not going to call him. So this really was a non-issue at that stage. There was a little discussion toward the end of the case regarding the possibility of either getting an instruction or arguing a missing witness point, but that was decided to be inappropriate and it was not done. How can you refuse to take the stand on the basis of the Fifth Amendment if the questions that are going to be asked of you are not going to incriminate you? And if they do, then you will object to those questions. That's my point. Not necessarily not being called. That's my point. The defense counsel could have pursued that course and determined whether there was... Could have called him. Could have, but chose not to. The most fundamental issue here is that none of these statements were offered for their truth. In fact, most of the statements that the defendant complains about were statements that were made clear to the jury were not true. They were statements about the basic facts of the trade, the daycare center, the daycare center's plan to apply for a grant to expand its operation, the willingness to offer... the daycare center's willingness to offer $7,000 in return for the letter. It was very clear none of those statements were true. They were not offered for their truth at all. And that's really the end of the discussion, actually. But in fact, they were offered, the statements were offered to the defendant's statements in context, the defendant's statements and his actions. And every one of the statements that was offered from the standpoint of the CS fit precisely into the hypothetical that Judge Easterbrook offered, which was, I'm going to make this offer or they're going to make this offer for you, will you accept it? Are you interested in it? And some of those statements were not... did not have question marks at the end of them, but they nevertheless were offered to elicit a response from the defendant as to whether he was interested in pursuing it. It was the defendant's statements, whether it be yes, or cash, or cheddar, or seven stacks, or chop. Here, the defendant's statements were the ones that were incriminating. And it was very obvious, I think, to the jury, without having to parse through the hearsay rule, it was very obvious to the jury the statements that the government was focused on in terms of incrimination. Those were the defendant's statements. Those were the ones that were stressed. Those were the ones that most obviously demonstrated the defendant's criminality here. And as Judge Flom has pointed out, here there was absolutely overwhelming evidence of the defendant's guilt in the form of his own statements on the tapes as well as in the form of a confession after the fact in the recovery of marked bills that were part of the $7,000 payment to the defendant in return for the letter. So any error, there was no error, but any error was clearly harmless beyond a reasonable doubt. And with that, we would ask that the court affirm the defendant's conviction and sentence unless there are any further questions. Okay, thank you, Ms. Fonamici. So, Ms. Jacobs, your time ran out, but if you have something you want to say. The only thing I would say, government counsel is talking about how we had the opportunity to call the informant if we wanted to, but again, it was the government that proffered this evidence, and as she indicated, they chose not to call him and thereby avoided the confrontation that was so necessary to fully inform the defendant's statements here. And with all of that, I would just ask that the court vacate the defendant's conviction and remand for a new trial. Thank you very much. You were appointed, were you not? I was. Thank you for your efforts on behalf of the court. Thank you, Ms. Fonamici.